UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN E. BAIN,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

Civil No. 06-394-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff Karen E. Bain brings this action for judicial review of a final decision from

defendant Commissioner denying plaintiff's application for disability insurance benefits (DIB)

and Supplemental Security Income (SSI) payments.  Plaintiff filed an application for these

benefits on December 3, 2002.  She alleged that her disability began on September 15, 2001,

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security
and he should be substituted in these proceedings as such.  42 U.S.C. § 405(g); Fed. R.
Civ. P. 25 (d)(1).

stemming from fibromyalgia and a bipolar disorder.  Her application was denied initially and

upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held on June 15, 2005, at which the ALJ heard testimony from plaintiff, who was

represented by an attorney, plaintiff's treating mental health practitioner, and a vocational expert

(VE).  The ALJ issued a ruling on August 8, 2005, concluding that plaintiff was not entitled to

benefits.  This decision became the Commissioner's final decision upon the Appeals Council's

denial of review.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Plaintiff subsequently filed a

Complaint seeking this court's judicial review.

**FACTUAL BACKGROUND**

        Plaintiff was forty-three years old at the time of the ALJ's decision.  She obtained a

bachelor's degree in theater and communications and a master of fine arts degree in theater and

directing.  Tr. of Admin. R. (hereinafter, Tr.) 24.  She had past relevant work experience as a

college instructor, waitress, children's librarian, and theater manager.  *Id.*  She testified that she

had difficulty leaving her house three weeks per month.  Tr. 380, 383-84.  She was exhausted by

small amounts of activity and had problems dealing with people.  Tr. 381, 385.  She used

marijuana on a weekly basis for "medicinal purposes."  Tr. 387.  She was diagnosed with

fibromyalgia and "major depressive disorder, recurrent, mild to moderate" in 2001, bipolar II

disorder in 2002, and bipolar I disorder in 2005.  Tr. 16-17.

**STANDARDS**

        To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to

engage in any substantial gainful activity (SGA) "by reason of any medically determinable

physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA.  20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. § 404.1520(e).

3  - OPINION AND ORDER

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.

4   - OPINION AND ORDER

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since September 15, 2001. Tr. 16, Finding 2. At Step Two, the ALJ found that plaintiff had severe impairments including fibromyalgia, bipolar I disorder, and cannabis abuse. Tr. 16-17, Finding 3.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 18-19, Finding 4.

At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 24, Finding 6. The ALJ so found after determining that plaintiff had the RFC to lift and/or carry ten pounds frequently and twenty pounds occasionally. She can stand and/or walk about

six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. She

can frequently climb ramps and stairs, balance, kneel, crouch, and crawl. She can occasionally

stoop push, pull, and engage in overhead reaching, but can never climb ladders, ropes, or

scaffolds. She must avoid concentrated exposure to noise and is limited to work involving

simple, repetitive tasks and little public contact. Tr. 19-20, Finding 5.

At Step Five, based in part upon the testimony of a VE, the ALJ found that plaintiff could

perform other work existing in significant numbers in the national economy. Tr. 24-25, Finding

10; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g). This work includes employment as a

small products assembler, electronics worker, and packing line worker. *Id.*

## QUESTIONS PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final

decision for further findings or for an award of benefits primarily due to the following alleged

errors by the ALJ: (1) failing to properly address plaintiff's testimony; (2) failing to properly

address medical evidence; (3) failing to evaluate witness testimony properly; and (4) relying on

an incomplete hypothetical question to the VE. This court has examined each of plaintiff's

arguments, and concludes that they are without merit.

## DISCUSSION

### 1.    Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in evaluating her testimony. If an ALJ finds that a

claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility

determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*,

947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is

credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273,1281-82 (9th Cir. 1996) (citation and quotation omitted). An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. *See* 799 F.2d 1403, 1406-07 (9th Cir. 1986). If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only after offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)); *see also Cotton*, 799 F.2d at 1407. Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of

symptom. This means that the claimant need not produce objective medical evidence of the

*symptom*, or the severity thereof:

> [B]y requiring that the medical impairment "could reasonably be expected to
> produce" pain or another symptom, the *Cotton* test requires only that the causal
> relationship be a reasonable inference, not a medically proven phenomenon.
> Finally, the claimant need not show that her impairment could reasonably be
> expected to cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the symptom. This
> approach reflects the highly subjective and idiosyncratic nature of pain and other
> such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony
> under the *Cotton* analysis simply because there is no showing that the impairment
> can reasonably produce the *degree* of symptom alleged.

*Smolen*, 80 F.3d at 1282 (emphasis added) (citations and footnote omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination

include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

of any medication; treatment, other than medication; measures used to relieve symptoms; and

functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts

in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In

determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
> for lying, prior inconsistent statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid; (2) unexplained or
> inadequately explained failure to seek treatment or to follow a prescribed course
> of treatment; and (3) the claimant's daily activities.

*Id*. (citations and footnote omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or

combination of impairments *could reasonably be expected to* (not that it did in fact) produce

some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting

that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of

plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see*

*also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

      In this case, plaintiff produced some objective medical evidence regarding her

impairments. However, the ALJ referred to clear and convincing evidence in the record

supporting the ALJ's partial rejection of plaintiff's testimony about her limitations. The ALJ

examined the relevant medical reports extensively before concluding that plaintiff's testimony

regarding the impact of her impairments was only partially supported by the medical evidence.

The ALJ acknowledged that plaintiff's conditions included fibromyalgia and bipolar I disorder,

and included these issues in deciding to restrict plaintiff to light unskilled work that entails only

simple, routine, repetitive tasks and little public contact. Tr. 19-24.

      The ALJ properly concluded that plaintiff's subjective testimony regarding her symptoms

was only partially credible. Tr. 20-23. The ALJ found that some of plaintiff's alleged symptoms

and their intensity, persistence, and limiting effects are unsupported by objective medical

findings or other corroborating evidence. Tr. 20. For example, the ALJ noted that plaintiff's

complaints of "debilitating" fibromyalgia symptoms were contradicted by plaintiff's physicians,

Tom Valentine, M.D. and Anita Goel, M.D., who opined that her fibromyalgia was not of a

severity to prevent her from working. Tr. 20, 23. Similarly, the ALJ noted that plaintiff's

alleged symptoms of post-traumatic stress disorder were unsupported by any diagnosis of an

anxiety disorder. Tr. 21.

9  - OPINION AND ORDER

The ALJ also considered medical reports of improvement and conservative treatment that contradicted plaintiff's complaints of continued and severe impairment. *See Morgan v. Comm'r of Soc. Sec*, 169 F.3d 595, 599-600 (9th Cir. 1999). For example, the ALJ referred to treatment records from Magnus Lakovics, M.D., indicating that plaintiff was stable, improving, and doing well on her medication regimen with minimal side effects. Tr. 21. The ALJ also noted testimony by plaintiff's treating mental health practitioner, Debora Stout, PMNHP (Nurse Stout), that plaintiff's functioning had improved with prescribed medications and mental health counseling and that the severity of plaintiff's depressive symptoms and frequency of her mood cycling had decreased. Tr. 21.

Additionally, the ALJ relied on ordinary techniques for evaluating plaintiff's credibility, including evidence suggesting that plaintiff has exaggerated her symptoms and limitations. Tr. 22-23. The ALJ referenced an evaluation by Daryl Birney, Ph.D., which suggested that plaintiff may have embellished her symptoms. Tr. 22. Doctor Birney reported that plaintiff's Minnesota Multiphasic Personality Inventory-2 (MMPI-2) profile was of "questionable validity due to an elevated F scale. This typically happens when the individual is confused by the items or is exaggerating symptoms in a 'cry for help' or in an attempt to 'fake bad.'" Tr. 338. The ALJ also noted plaintiff's apparent alternations between emphasizing symptoms of fibromyalgia and bipolar disorder, depending on the degree of support that she received from treating health professionals. Tr. 23. In particular, the ALJ referenced plaintiff's statement to Dr. Goel that plaintiff "can obtain disability on the basis of her bipolar disorder" after being informed that her fibromyalgia was not disabling. *Id.*

10 - OPINION AND ORDER

Moreover, the ALJ noted that plaintiff failed to seek treatment for fibromyalgia after January 2003, despite reporting in December 2004 that her fibromyalgia symptoms had been "debilitating" for three years. Tr. 20. The ALJ further referenced a January 2005 report by Dr. Goel that plaintiff sought treatment for fibromyalgia because she needed to have her disability status renewed in order to continue receiving private benefits. Tr. 20. The ALJ also noted plaintiff's failure to follow treatment recommendations for her alleged mental health impairments, including her continued weekly use of marijuana, which is contraindicated by her diagnosed bipolar disorder. Tr. 21.

Finally, there is evidence that plaintiff enjoys numerous activities of daily living that suggest she is not as limited as she alleges. According to Nurse Stout's 2002-2003 treatment records, plaintiff painted, took art classes three days per week, performed volunteer work, and worked periodically as a waitress, spent five weeks visiting her family in Arizona after hosting them during holidays, attended yoga classes, considered applying for a job at a local travel agency, and spent time attending outings with friends, reading, and doing puzzles. *Id.* Similarly, plaintiff indicated in a questionnaire that she could remain active for two to five hours before needing to rest, and reported shopping for groceries, preparing meals, painting, drawing for thirty minutes every other day, working with wire sculptures five hours per week, completing word puzzles daily, walking her dog five to twenty minutes, swimming ten to twenty minutes every other day, and stretching weekly. *Id.* The ALJ further noted plaintiff's 2005 report to Dr. Birney that she spends her time "doing puzzle books a lot," reading, doing art work, walking the dog, swimming, cooking, overseeing the cleaning, helping with laundry, and shopping. *Id.* An

ALJ may properly consider a claimant's activities of daily living when assessing his or her credibility. *See Thomas*, 278 F.3d at 958-59.

This court concludes that plaintiff's credibility was evaluated properly in light of the lack of medical evidence to support the severity of limitations she claimed and the inconsistencies between her reported daily activities and her alleged mental and physical limitations. The ALJ offered clear and convincing reasons for rejecting plaintiff's allegation of disability, which are supported by substantial evidence. Tr. 21-22. Accordingly, the ALJ reasonably concluded that plaintiff's subjective testimony regarding her symptoms and limitations was an unreliable basis upon which to establish plaintiff's RFC. Tr. 21-22.

**2.    Medical Opinions**

Plaintiff next contends that the ALJ erred by rejecting the opinions of Dr. Birney, Linda Jensen, M.D., and Nurse Stout. The court concludes that the ALJ addressed these opinions properly. While clear and convincing reasons are required to reject a treating or examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041.

Plaintiff claims that the ALJ improperly disregarded the opinion of psychologist Dr. Birney. Based on plaintiff's MMPI-2 personality profile and her reported history of bipolar disorder, depression, and apathy, Dr. Birney found plaintiff slightly limited in her ability to understand, remember, and carry out detailed instructions, and moderately limited in her ability to respond appropriately to supervision, co-workers, and work pressures, indicating that plaintiff can function well or satisfactorily in these areas. Tr. 354. The ALJ incorporated these

12 - OPINION AND ORDER

limitations in determining that plaintiff could carry out simple, repetitive tasks with little public contact. *See* Tr. 19-20, Finding 5.

The ALJ properly rejected Dr. Birney's conclusion that plaintiff's mood swings made it unlikely that she could sustain work over time. Tr. 22, 354. The ALJ noted that Dr. Birney examined plaintiff on only one occasion and could not give an informed opinion as to the frequency and duration of her mood swings. Tr. 22. Presumably, the ALJ traced Dr. Birney's knowledge of plaintiff's mood swings and their frequency to plaintiff's own subjective descriptions of her symptoms, which Dr. Birney indicated could be exaggerated. *Id.* Based in part on Dr. Birney's remarks, the ALJ found that plaintiff's subjective complaints supporting Dr. Birney's opinion "cannot be taken at face value." *Id.* An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The court concludes that the ALJ 's rejection of Dr. Birney's opinion was supported by substantial evidence.

Plaintiff also contends that the ALJ failed to account for Dr. Jensen's opinion regarding plaintiff's reaching abilities. In her RFC Assessment of plaintiff, Dr. Jensen checked a box indicating that plaintiff had "limited" ability to "reach[] in all directions (including overhead)." Tr. 295. Doctor Jensen's notes from the same time period clarify that the reaching limitation Dr. Jensen intended was "overhead" reaching, specifically, and not reaching in all directions. Tr. 166 (indicating that Dr. Jensen "discussed light with OH reach, stooping, & noise exposure limitations"). This limitation was accepted and reflected in the ALJ's hypothetical question to the VE, which limited plaintiff to occasional overhead reaching. Tr. 392.

13 - OPINION AND ORDER

Finally, plaintiff complains that the ALJ rejected Nurse Stout's disability opinions improperly.  The court notes at the outset that, as an independent nurse practitioner, Nurse Stout is not an "acceptable medical source," and so could not provide evidence of a "medically determinable impairment."  *See* 20 C.F.R. § 404.1513; *see also Gomez*, 74 F.3d at 971("a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not").  Moreover, the ALJ offered cogent reasons for rejecting her opinion that plaintiff's mental impairments result in "marked" impairment.  These include plaintiff's medical records indicating moderate impairment only, Nurse Stout's testimony that plaintiff had improved under her care with prescribed medications and counseling, and Nurse Stout's treatment records indicating a level of activity inconsistent with disability.  Tr. 19, 22.

## 3.    Lay Testimony Evaluation

Plaintiff argues that the ALJ did not give proper consideration to the lay witness testimony of plaintiff's co-worker, Judith Niland, and her roommate, Deac Guidi.  An ALJ need only give germane reasons to reject lay witness testimony.  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Smolen*, 80 F.3d at 1288.  One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.  *Lewis*, 236 F.3d at 511 (citation omitted).

The ALJ gave little weight to Niland's report that plaintiff is extremely limited by fatigue and unable to work due to physical and mental problems because those observations conflicted with the medical evidence, including Dr. Valentine's opinion that plaintiff's fibromyalgia was not severe enough to prevent her from working, and Dr. Goel's report that plaintiff's fatigue can be

controlled with lifestyle modifications.  Tr. 23.  The ALJ also noted that Niland's statement that

plaintiff had followed all treatment recommendations was inconsistent with Nurse Stout's

testimony that plaintiff continued to use marijuana although it was contraindicated by her bipolar

disorder.  *Id.*  The ALJ provided germane reasons for rejecting Niland's testimony and correctly

concluded that her testimony was inconsistent with the medical evidence and Nurse Stout's

testimony.  *Id*.

The ALJ also offered germane reasons for rejecting the testimony of plaintiff's roommate,

Guidi.  The ALJ found Guidi's statement that plaintiff is unable to concentrate or leave the house

inconsistent with evidence that plaintiff spends time doing "puzzle books" and becomes fatigued

after going shopping.  Tr. 23-24.  The ALJ also noted Guidi's apparent penchant for hyperbole,

based on his description of plaintiff as "someone who would probably have been one of the

greatest American theatre minds."  Tr. 24 (quoting Guidi's statement, found at Tr. 178).

**4.      Residual Functional Capacity and Employability**

Plaintiff also argues that the ALJ erred by relying upon an inadequate RFC in developing

hypothetical questions for the VE at Step Five.  As noted above, the ALJ must determine if the

claimant is capable of performing work existing in the national economy.  The ALJ can establish

this by showing that jobs exist in the national economy that the claimant's RFC permits him or

her to perform.

The ALJ's first hypothetical question to the VE began by describing a person with work

experience as a college instructor, waitress, children's librarian, and theater director.  Tr. 391.

The VE was asked to consider a prospective employee with impairments allowing light work

only.  Tr. 392.  The employee can climb stairs but should not climb ladders, ropes, or

15 - OPINION AND ORDER

scaffolding.  *Id.*  The employee is limited to occasional kneeling and overhead reaching, and should avoid concentrated exposure to noise.  *Id.*  The employee is further limited to "routine repetitive work with little public contact."  *Id.*

The VE testified that all jobs in which plaintiff was experienced would be eliminated, but identified other jobs that would be appropriate, including small products assembler, electronic worker, and packing line worker.  Tr. 392-93.

Plaintiff complains that the ALJ's hypothetical question failed to reflect plaintiff's limitations in climbing, balancing, crouching, crawling, stooping, pushing, and pulling.  The Commissioner correctly notes, and plaintiff does not dispute, that the jobs identified by the VE do not require climbing, balancing, crouching, crawling, or stooping.  Def.'s Brief at 10-11.  The descriptions of the relevant jobs found in the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT), do not indicate pushing or pulling duties.  DOT (4th ed. rev. 1991) 753.687-038 (Packing-line Worker), 706.684-022 (Assembler, Small Products I), 739.687-030 (Assembler, Small Products II), 726,687-010 (Electronics Worker).  Therefore, any failure to include these limitations in the hypothetical was harmless, and the ALJ's finding that plaintiff could perform the jobs identified by the VE was supported by substantial evidence.

Plaintiff also complains that the ALJ's hypothetical question limited plaintiff to "routine repetitive work," rather than limiting her to "simple, repetitive tasks," as the ALJ found in determining plaintiff's RFC.  Pl.'s Opening Brief at 8.  The DOT indicates that each job identified by the VE has a Specific Vocation Preparation (SVP) level of two out of a nine-point scale, which corresponds to "unskilled work."  DOT (4th ed. rev. 1991) 753.687-038 (Packing-line Worker), 706.684-022 (Assembler, Small Products I), 739.687-030 (Assembler, Small

16 - OPINION AND ORDER

Products II), 726,687-010 (Electronics Worker).  Unskilled work is "work which needs little or

no judgment to do simple duties that can be learned on the job in a short period of time."  20

C.F.R. § 404.1568(a).  Accordingly, plaintiff's mental RFC is consistent with the DOT's

applicable SVP level.

The identified jobs also require a General Education Development Reasoning

(hereinafter, GED Reasoning) level of two out of a six-point scale, which requires the ability to

"[a]pply commonsense understanding to carry detailed but uninvolved written or oral

instructions," and to "[d]eal with problems involving a few concrete variables in or from

standardized situations."  DOT, Appendix C.  Plaintiff maintains that her mental RFC is

inconsistent with level-two GED Reasoning, but cites no authority for this proposition.  Other

courts have found level-two GED Reasoning to be consistent with an ability to perform simple,

routine, repetitive work.  *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)

(finding claimant's inability to perform more than simple and repetitive tasks was consistent with

level-two reasoning, but not level-three reasoning); *Meissl v. Barnhart*, 403 F. Supp. 2d 981,

983-85 (C.D. Cal. 2005) (holding that claimant, whose RFC limited her to simple tasks

performed at a routine or repetitive pace, was able to perform jobs listed in the DOT with level-

two GED Reasoning).  The court is unpersuaded by plaintiff's efforts to distinguish these

decisions.  The ALJ's finding that plaintiff is capable of performing work existing in the national

economy was supported by substantial evidence.

///

///

///

17 - OPINION AND ORDER

///

///

## **CONCLUSION**

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record.  The final decision of the Commissioner denying plaintiff Karen E. Bain's applications for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this ___15___ day of May, 2007.


___/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge

18 - OPINION AND ORDER